**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Bahar Sodaify (SBN 289730)
*bsodaify@clarksonlawfirm.com*
Alan Gudino (SBN 326738)
*agudino@clarksonlawfirm.com*
Ryan D. Ardi (SBN 348738)
*rardi@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH KERMANI, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   vs.<br><br>MONDELEZ GLOBAL LLC,<br><br>       Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>1. VIOLATION OF UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §§ 17200, *et seq.*)<br>2. VIOLATION OF FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE §§ 17500, *et seq.*)<br>3. VIOLATION OF CONSUMERS LEGAL REMEDIES ACT (CAL. CIV. CODE §§ 1750, *et seq.*)<br>4. BREACH OF IMPLIED WARRANTY<br>5. UNJUST ENRICHMENT<br>6. NEGLIGENT FAILURE TO WARN<br><br>**JURY TRIAL DEMANDED** |

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

# TABLE OF CONTENTS

**Page No.**

INTRODUCTION ................................................................................................ 1

JURISDICTION ................................................................................................. 6

VENUE ............................................................................................................. 6

PARTIES .......................................................................................................... 6

FACTUAL ALLEGATIONS .............................................................................. 9

    A.    Background ........................................................................................ 9

    B.    Plaintiff and Reasonable Consumers Were Misled by the Material Omission ...................................................................................... 20

    C.    No Adequate Remedy at Law ......................................................... 22

CLASS ACTION ALLEGATIONS ................................................................. 27

CAUSES OF ACTION ................................................................................... 31

COUNT ONE .................................................................................................. 31

    "Unfair" Prong ...................................................................................... 33

    "Fraudulent" Prong ................................................................................ 35

    "Unlawful" Prong .................................................................................. 36

COUNT TWO .................................................................................................. 38

COUNT THREE .............................................................................................. 39

COUNT FOUR ................................................................................................ 41

COUNT FIVE .................................................................................................. 43

COUNT SIX .................................................................................................... 44

PRAYER FOR RELIEF ................................................................................... 46

DEMAND FOR JURY TRIAL ........................................................................ 47

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

Plaintiff Elizabeth Kermani ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, brings this class action complaint against Defendant Mondelez Global LLC. ("Defendant" or "Mondelez"). Plaintiff's allegations are based upon personal knowledge as to herself and her own acts, and upon information and belief as to all other matters based on investigation conducted by and through Plaintiff's attorneys. Plaintiff believes that substantial additional evidentiary support exists for the allegations set forth herein, after a reasonable opportunity for discovery.

## **INTRODUCTION**

1.    **Synopsis.** Compared to other types of chocolate, dark chocolate is considered a healthier chocolate rich in antioxidants and other beneficial compounds. Consumers who purchase dark chocolate therefore believe they are consuming healthier chocolate. However, a recent study revealed that certain dark chocolate products, including Defendant's Green & Black's Organic Dark Chocolate 70% Cacao and Hu Organic Simple Dark Chocolate 70% Cacao, contain alarming levels of dangerous heavy metals that can pose serious health risks to consumers. The study found that just one ounce of Defendant's Green & Black's Organic Dark Chocolate 70% Cacao contains a staggering 181% of California's daily maximum allowable dose level (MADL) for cadmium and 143% of the MADL for lead; Defendant's Hu Organic Simple Dark Chocolate 70% Cacao contains a shocking 210% of California's daily maximum allowable dose level (MADL) for lead and 56% of the MADL for cadmium.[1] Lead and cadmium are toxic heavy metals that are unsafe for consumption because they can cause various health issues in adults and children. Yet, to increase its profits and gain an unfair advantage over its competitors, Defendant sells the Products without disclosing the heavy metal content contained therein, deliberately

---

[1] "Lead and Cadmium Could Be in Your Dark Chocolate" (Dec. 15, 2022), Consumer Reports, https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550/.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

leading reasonable consumers, including Plaintiff, to believe the Products are safe for consumption when they are not. A true and accurate depiction of the label and packaging for Defendant's Green & Black's Organic Dark Chocolate 70% Cacao and Hu Organic Simple Dark Chocolate 70% Cacao is depicted below as "**Exhibit 1**" and "**Exhibit 2**."

**Exhibit 1.** Green & Black's Organic Dark Chocolate 70% Cacao



CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

**Exhibit 2.** Hu Organic Simple Dark Chocolate 70% Cacao



3

2.     **The Product(s).** The Products at issue include the Green & Black's Organic Dark Chocolate 70% Cacao, Hu Organic Simple Dark Chocolate 70% Cacao, and all other substantially similar dark chocolate products manufactured or sold by Defendant to consumers in California and the United States that materially omit the contents of lead and cadmium therein.

3.     **The Deception.** Defendant has misled reasonable consumers, including Plaintiff, into believing the Products are safe for consumption when they are not. A December 2022 Consumer Reports study measured the amount of heavy metals in dark chocolates, including the Products, against California's daily MADL for lead (0.5 micrograms) and cadmium (4.1 micrograms).[2] The study found that Defendant's Products "contain cadmium and lead—two heavy metals linked to a host of health problems in children and adults," in amounts such that "eating just an ounce a day would put an adult over a level that public health authorities and Consumer Reports' experts say may be harmful . . . ." *Id.* The study also found that just an ounce of the Green & Black's Organic Dark Chocolate 70% Cacao contained a staggering amount of cadmium, measuring at 181% of California's MADL for cadmium, and a significant amount of lead, measuring at 143% of the MADL for lead. *Id.* This Product contains 3.17 ounces of chocolate per bar. (*See* Ex. 1, *supra.*) The study also found that just an ounce of the Hu Organic Simple Dark Chocolate 70% Cacao contained a staggering amount of lead, measuring at 210% of California's MADL for lead, and a significant amount of cadmium, measuring at 56% of the MADL for cadmium. *Id.* This Product contains 2.1 ounces of chocolate per bar. (*See* Ex. 2, *supra.*) Exposure to lead and cadmium can have detrimental effects on humans. Lead and cadmium can accumulate in the body over time and cause a range of health issues, including

---

[2] "Lead and Cadmium Could Be in Your Dark Chocolate" (Dec. 15, 2022), Consumer Reports, https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550/.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

developmental toxicity, male reproductive toxicity, and female reproductive toxicity.[3] Frequent, long-term exposure to even small amounts of heavy metals can also lead to "nervous system problems, hypertension, immune system suppression, kidney damage, and reproductive issues."[4] Defendant's failure to disclose its Products' alarming lead and cadmium content places consumers in jeopardy of developing illnesses.

4. **Duty to Disclose and Materiality of Material Omission.** Defendant had a duty to warn consumers about the risks associated with consuming its Products, because Defendant knew or should have known that its Products contain heavy metals toxic to humans. Defendant's failure to disclose the heavy metal content in its Products is a material omission because the information is relevant to consumers' decision-making process. Lead and cadmium are known to have adverse effects on humans, and this information could influence consumers' decisions to purchase the Products. Plaintiff and other consumers like her would not have purchased the Products had they known the Products contained harmful lead and cadmium.

5. **Primary Dual Objectives.** Plaintiff brings this action individually and in a representative capacity on behalf of those similarly situated consumers who purchased the Products during the relevant Class Period (Class and/or Subclass defined *infra*), for dual primary objectives: ***One***, Plaintiff seeks, on her behalf and on behalf of the Class/Subclass, injunctive relief to stop Defendant's unlawful manufacture, marketing, and sale of the Products with the material omission about lead and cadmium to avoid or mitigate the risk of deceiving the public into believing the Products are safe for consumption, by requiring that Defendant change its business

---

[3] California Office of Environmental Health Hazard Assessments, *Lead and Lead Compounds,* OEHHA, https://oehha.ca.gov/proposition-65/chemicals/lead-and-lead-compounds; California Office of Environmental Health Hazard Assessments, *Cadmium*, OEHHA, https://oehha.ca.gov/proposition-65/chemicals/cadmium.

[4] "Lead and Cadmium Could Be in Your Dark Chocolate" (December 15, 2022), Consumer Reports, https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550/.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

practices, which may include one or more of the following: inclusion of a disclaimer on the Products' labels and/or packaging, modification of the Products' formulation be it a change in ingredients or their sourcing and manufacturing processes, and/or discontinuance of the Products' manufacture, marketing, and/or sale. *Two*, Plaintiff seeks, on Plaintiff's behalf and on behalf of the Class/Subclass, a monetary recovery of the full price that Plaintiff and consumers paid for the Products, which should have disclosed the heavy metal content in them, as consistent with permissible law (including, for example, damages, restitution, disgorgement, and any applicable penalties/punitive damages solely as to those causes of action so permitted).

## JURISDICTION

6.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and defendant are citizens of different states. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## VENUE

7.    Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Plaintiff is a citizen of California, resides in this District, and purchased the Products within this District. Moreover, Defendant receives substantial compensation from sales in this District, and Defendant's material omissions had a substantial effect in this District.

## PARTIES

8.    **Plaintiff Kermani.** The following is alleged based upon personal knowledge:

   a.   **Residence.** Plaintiff is a resident of California.

   b.   **Purchase Details.** Plaintiff purchased Defendant's Green & Black's

Organic Dark Chocolate 70% Cacao and Hu Organic Simple Dark Chocolate 70% Cacao for approximately $5.50 for the Green & Black's Organic Dark Chocolate 70% Cacao and approximately $7.00 for the Hu Organic Simple Dark Chocolate 70% Cacao at a Erewhon store in Los Angeles, California, in or around Winter 2022.

c. **Reliance on Material Omission.** In making her purchase, Plaintiff relied upon the Products' labeling, packaging, and advertising. Plaintiff believed the Products could be safely consumed because the Products did not contain any warning or disclosure about the lead and cadmium content therein.

d. **No Actual Knowledge of Falsity.** At the time of purchase, Plaintiff did not know that the Products contained lead or cadmium or that it was unsafe for consumption.

e. **No Warning.** Plaintiff did not see any disclaimer, qualifier, or other explanatory statement or information on the Products' labels or packaging that suggested that the Products contained lead and cadmium or that it was not safe for consumption. Defendant had exclusive knowledge of this information but nevertheless failed to inform consumers.

f. **Causation/Damages.** Plaintiff would not have purchased the Products if the heavy metal content contained in it had been disclosed, and had Plaintiff known that the Products were not safe for consumption.

g. **Desire to Repurchase.** Plaintiff continues to see the Products available for sale and desires to purchase it again if she could be sure about the contents of the Products.

h. **Lack of Personal Knowledge/Expertise to Determine Truth.** Plaintiff is not personally familiar with the science behind the Products as she does not possess any specialized knowledge, skill, experience,

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

or education in chocolate products, similar to and including the Products, and she has no way of determining whether the Products contain heavy metals.

    i.   **Inability to Rely.** Plaintiff is, and continues to be, unable to rely on the Products' true contents.

9.   **Plaintiff's Future Harm.** Defendant continues to market and sell the Products without disclosing the heavy metals contained in them. Plaintiff wants to purchase the Products in the future if she can be sure about the content in the Products. However, Plaintiff is an average consumer who is not sophisticated in, for example, dark chocolate products, similar to and including the Products, and she cannot determine if harmful heavy metals, such as lead and cadmium, are present in Defendant's Products. Since Plaintiff would like to purchase the Products again—despite the fact that the Products currently fail to disclose the heavy metals contained in them—Plaintiff would likely and reasonably, but incorrectly, assume the Products are safe for consumption if no appropriate warning is placed on the Products' labels. Accordingly, Plaintiff is at risk of reasonably, but incorrectly, assuming that Defendant has fixed the Products such that Plaintiff may buy them again, believing they no longer contain harmful heavy metals. In this regard, Plaintiff is currently and, in the future, deprived of the ability to rely on the Products' labeling and packaging.

10.   **Defendant Mondelez.** Defendant is a Delaware corporation with its principal place of business in Chicago, Illinois. Defendant was doing business in the state of California at all relevant times, including the Class Period. Directly and through its agents, Defendant has substantial contacts with and receives substantial benefits and income from and through the state of California, as well as the United States of America. Defendant is an owner, manufacturer, and/or distributor of the Products, and created and/or authorized the labeling to market the Products. Defendant and its agents promoted, marketed, and sold the Products at issue throughout the United States and, in particular, within this state and judicial district.

CLASS ACTION COMPLAINT

The unfair, unlawful, deceptive, and misleading labeling on the Products was prepared, authorized, ratified, and/or approved by Defendant and its agents to deceive and mislead consumers in the state of California and the United States into purchasing the Products. Additionally, Defendant knew about the heavy metal content in the Products but failed to disclose that information to consumers. The information was material, and Defendant had a duty to disclose the information, because the information could influence a consumer's purchasing decision, and it therefore created an unreasonable safety risk to consumers.

## FACTUAL ALLEGATIONS

### A.    Background

11.    **History of Chocolate**. Chocolate is derived from Theobroma cacao, also known as the cacao tree or cocoa tree.[5] The cacao/cocoa tree is native to Central and South America and grows upwards to 30 feet.[6] It produces a pod-like fruit which contains about 40 to 50 beans once matured.[7] All forms of chocolates are derived from cacao beans. To create chocolate, the cacao beans are separated from the pod and the pulp within the pod.[8] The beans are then fermented, dried, and roasted.[9] The

---

[5] "Theobroma cacao L. (Malvaceae)," UNIVERSITY OF OXFORD, https://herbaria.plants.ox.ac.uk/bol/plants400/Profiles/ST/Theo#:~:text=Theobroma%20cacao%20is%20the%20Latin,his%20Species%20Plantarum%20(1753).

[6] "Theobroma cacao," MISSOURI BOTANICAL GARDEN, https://www.missouribotanicalgarden.org/PlantFinder/PlantFinderDetails.aspx?taxonid=287263.

[7] Frank Robles, "About The Cacao Tree," CHOCOLATE, https://www.chocolate.org/blogs/chocolate-blog/about-the-cacao-tree.

[8] "Harvesting & Post-harvest processing," ICCO Secretariat INTERNATIONAL COCOA ORGANIZATION, https://www.icco.org/harvesting-post-harvest-new/.

[9] Veronika Barišić, et al., "The Chemistry behind Chocolate Production," NATIONAL LIBRARY OF MEDICINE, (Aug. 30, 2019), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6749277/.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

roasted beans are next crushed, allowing for the removal of their outer hulls.[10] The nibs that remain are ground to form a paste-like chocolate liquor.[11] This chocolate liquor is the starting point of all chocolate products.[12] It is mixed with other ingredients, including sugar, milk, additional cacao fat or butter (cacao bean contain cacao fat/butter), and various spices, which, when blended with emulsifiers, create the final chocolate product consumers purchase.[13]

12.    Chocolate's popularity made chocolate a commodity. The industrial revolution allowed companies like Cadbury, Nestle and Hershey to mass-produce chocolate products.[14] Mass-production resulted in lower prices, meaning greater percentages of the population began enjoying chocolate products.[15] Today chocolate is a $130 billion global industry, and Americans spend roughly $22 billion a year on chocolate products.[16]

13.    On average, each American consumes nearly twelve pounds of chocolate

---

[10] "How is Chocolate Made?" SCIENCE OF COOKING, https://www.scienceofcooking.com/chocolate/how-is-chocolate-made.htm#:~:text=GRINDING%20OF%20NIB,flows%20out%20in%20liquid%20form.

[11] Id.

[12] Id.

[13] Id.

[14] "More Chocolate, More Quickly!: Changes in Chocolate Consumption brought about by the Industrial Revolution," WORD PRESS, (Mar. 24, 2020), https://chocolateclass.wordpress.com/2020/03/24/more-chocolate-more-quickly-changes-in-chocolate-consumption-brought-about-by-the-industrial-revolution/.

[15] Id.

[16] Govind Bhutada, "Cocoa's bittersweet supply chain in one visualization," WORLD ECONOMIC FORUM, (Nov. 4, 2020), https://www.weforum.org/agenda/2020/11/cocoa-chocolate-supply-chain-business-bar-africa-exports/; Linda Searing, "The Big Number: $22 billion a year on chocolate. Is that healthy?" THE WASHINGTON POST, (Feb. 10, 2018), https://www.washingtonpost.com/national/health-science/the-big-number22-billion-a-year-on-chocolate-is-that-healthy/2018/02/09/6a6cee4c-0d1a-11e8-8890-372e2047c935_story.html.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

per year.[17] This appetite for chocolate is warranted. Not only is chocolate tasty, but studies show that it has positive physical effects on humans, which is why the product has been sought after for thousands of years.[18] Chemicals in chocolate have been shown to trigger euphoria, the same endorphins that trigger the "in love" feeling in humans, which is why chocolate is unsurprisingly the go-to Valentine's Day gift.[19] In surveys measuring flavors, chocolate consistently remains the favorite.[20] Chocolate's ability to increase alertness and energy is well-documented, which is why chocolate has been standard issue to U.S. servicemen since George Washington.[21] The effects of chocolate are so well-known, it has been an integral part of the cultural psyche since the Aztecs.[22] Even modern examples like the 1971 film Willy Wonka & the Chocolate Factory and the 2000 film Chocolate reference chocolate's cultural impact. Diners would be hard-pressed to see a dessert menu that did not contain at least one chocolate dessert.

14.    **Health Benefits of Dark Chocolate.** Dark chocolate has been widely considered to be the healthier option among other chocolate types. This is because

---

[17] Linda Searing, "The Big Number: $22 billion a year on chocolate. Is that healthy?" THE WASHINGTON POST, (Feb. 10, 2018), https://www.washingtonpost.com/national/health-science/the-big-number22-billion-a-year-on-chocolate-is-that-healthy/2018/02/09/6a6cee4c-0d1a-11e8-8890-372e2047c935_story.html.

[18] Donatella Lippi, "Chocolate in History: Food, Medicine, Medi-Food," NATIONAL LIBRARY OF MEDICINE, (May 5, 2013), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3708337/.

[19] Id.; Chris Kilham, "Chocolate: The Love Drug. . .And Why It's Good for You." FOX NEWS, (Oct. 23, 2015), https://www.foxnews.com/health/chocolate-the-love-drug-and-why-its-good-for-you.

[20] "Chocolate is America's favorite ice cream flavor, survey says," CBS MINNESOTA, (July 15, 2022) https://www.cbsnews.com/minnesota/news/america-favorite-ice-cream-flavor-chocolate/.

[21] Sean Jacobson, "'Chocolate is a Fighting Food! – Chocolate bars in the Second World War," NATIONAL MUSEUM OF AMERICAN HISTORY, (Oct. 24, 2016), https://americanhistory.si.edu/blog/chocolate-bars-second-world-war.

[22] "The Development of Chocolate," WORLD PRESS, (Mar. 15, 2019), https://chocolateclass.wordpress.com/2019/03/15/the-development-of-chocolate/.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

dark chocolate contains high concentrations of cocoa flavonoids, which are potent antioxidants. Among its many benefits, dark chocolate is known to positively affect heart health. Studies have shown that dark chocolate has the potential to reduce the risk of heart disease because it can help improve blood flow and lower blood pressure.[23] Dark chocolate can also have positive effects on cognitive function. One study found that consuming cocoa flavonoids can help improve memory and attention, especially among elderly participants with mild cognitive impairments.[24] Other studies have suggested that dark chocolate can have anti-inflammatory properties which can help reduce the risk of chronic diseases such as diabetes and cancer.[25] While other studies have found that the flavonoids in dark chocolate can improve mood and lower symptoms of anxiety and depression.[26]

15.   **Consumer Demand for Dark Chocolate.** For consumers, dark chocolate has become increasingly popular and sought after because of its perceived health benefits.[27] The cacao bean is one of the best-known sources of dietary polyphenols, constituting approximately 10% of a whole bean's dry weight.[28] The antioxidant

---

[23] "The Neuroprotective Effects of Cocoa Flavanol and its Influence on Cognitive Performance," National Library of Medicine (Feb. 5, 2013), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3575938/.

[24] *Id.*

[25] "The Effects of Cocoa on the Immune System," National Library of Medicine (June 4, 2013), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3671179/.

[26] "The Neuroprotective Effects of Cocoa Flavanol and its Influence on Cognitive Performance," National Library of Medicine (Feb. 5, 2013), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3575938/.

[27] "United States Chocolate Market – Growth, Trends, Covid-19 Impact, and Forecasts (2023-2028" Mordor Intelligence, https://www.mordorintelligence.com/industry-reports/united-states-chocolate-market; "Phenolic and Theobromine Contents of Commercial Dark, Milk and White Chocolates on the Malaysian Market" (Jan. 14, 2009), National Library of Medicine, https://ncbi.nlm.nih.gov/pmc/articles/PMC6254055/.

[28] "Chocolate, 'Food of the Gods': History, Science, and Human Health" (Dec. 6, 2019), National Library of Medicine, https://ncbi.nlm.nih.gov/pmc/articles/PMC6950163/.

CLASS ACTION COMPLAINT

properties of polyphenols are known to have positive effects on the cardiovascular system, the central nervous system, the intestinal system, and the immune system.[29] Dark chocolate in particular contains a higher percentage of cocoa and thus has higher phenolic antioxidant compounds when compared to other chocolate varieties. *Id.*

16.    **Heavy Metals in Chocolate.** Despite chocolate's popularity and health benefits, researchers, manufacturers, and chocolate companies have known about the high levels of lead and cadmium in cocoa/chocolate products.[30] During the late 1970s, after seeing high concentrations of lead in foods and human populations, researchers began to focus on the source of lead in cocoa, the main ingredient in chocolate products. *Id.* Regarding milk chocolate products, the Food and Drug Administration reported in its 2000 Total Diet Survey (TDS), that the "average lead content for milk chocolate candy bars (27 ng/g) was the fourth highest reported for all food items." *Id.* The 20th Australian TDS showed that "milk chocolate had the second highest value of 65 foods, with a mean value of 21 ng/g and a maximum value of 40 ng/g," whereas the 1997/1998 New Zealand TDS found that "lead concentration in chocolate biscuits (15 ng/g) was 3-fold greater than those of cracker (5.2 ng/g) and plain sweet biscuits (5.2 ng/g)." *Id.* A 2005 study shows that cocoa-based chocolates sold in India, Dahiya had an "average lead concentration of 1.92 µg/g (range, 0.05-8.3 µg/g)," and another 1999 study found the "average lead content of cocoa powders sold in Nigeria to be 310 ng/g with a range of 80-850 ng/g." *Id.*

17.    Lead and cadmium concentrations in dark chocolate are higher than those in milk chocolate, due to the higher amounts of cocoa solids. In a 2013 study, researchers found that "there was a linear correlation between the level of trace

[29] "Cocoa and Dark Chocolate Polyphenols: From Biology to Clinical Applications" (June 9, 2017), National Library of Medicine, https://ncbi.nlm.nih.gov/pmc/articles/PMC5465250/.

[30] Rankin, Charley W. "Lead contamination in cocoa and cocoa products: isotopic evidence of global contamination" (Oct. 2005), Environmental Health Perspective, https://pubmed.ncbi.nlm.nih.gov/16203244/.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

elements in chocolate and the cocoa solids content."[31] Specifically, "lead was found to be correlative to the cocoa solids content in all brands" evaluated. *Id.* For example, the "distribution of trace metals in cocoa powder" was 103 ng/g for lead and 125 ng/g for cadmium. In another 2014 study, the concentrations of cadmium and lead ranged from "<1.7-107.6 and <21-138.4 ng/g, respectively, and the highest concentrations of cadmium and lead were found in dark chocolates."[32] This study also found that a "linear correlation exists between the cocoa content and the concentration of cadmium ($R^2$=0.907) and lead ($R^2$=0.955)," where the $R^2$ value "indicates the percentage of the variance" between two variables, meaning a value closer to 1, demonstrates a higher level of correlation. *Id.* This means that dark chocolate with 47-85% cocoa solids concentrations had higher lead and cadmium concentrations. Cocoa solids are the biggest sources of lead and cadmium in cocoa products, so dark chocolate products that have a high concentration of cocoa solids have higher concentrations of lead and other heavy metals.

18.    Based on the prevailing research on lead and cadmium, Defendant knew or should have known that its chocolates have excessive levels of these heavy metals. Yet, Defendant failed to disclose to consumers the heavy metal content contained in its Products. This information is material to consumers because it influences their decision about whether to purchase the Products. This is especially true when the Products contain significant levels of both lead and cadmium, which are toxic heavy metals that can affect consumers' health and safety. Defendant's failure to disclose this information created a substantial and unreasonable health and safety risk to consumers.

---

[31] Yanus, Rinat Levi, et al. "Trace elements in cocoa solids and chocolate: An ICPMS study," (May 16, 2013), Talanta, https://www.sciencedirect.com/science/article/abs/pii/S0039914013008473.

[32] Villa, Javier E. L., et al. "Cadmium and Lead in Chocolates Commercialized in Brazil," (Aug. 15, 2014), Journal of Agricultural and Food Chemistry, https://pubs.acs.org/doi/abs/10.1021/jf5026604.

CLASS ACTION COMPLAINT

19. **Sources of Lead and Cadmium.** Lead does not appear in cacao beans naturally; rather, lead is introduced in various ways from the soil where the cacao beans are grown and the water used for irrigation to the equipment used to process the beans.[33] These sources can include the "burning of leaded gasoline and diesel fuel, from leaded paint, the burning of plastics and/or garbage, the operation of smelters and other industrial processes, use of fertilizers, and emissions from coal-fired power plants," which all spread lead to the soil and air.[34] The lead particles in the soil and air then penetrate the cacao beans during the outdoor harvesting, drying, and fermenting processes, and they remain on the wet cacao beans throughout other manufacturing steps. *Id.* Lead can also be present in metal equipment like the mixers and grinders used to process the beans. Much like lead, cadmium is introduced through the soil as it is absorbed by the roots of the cacao trees and deposited in parts of the fruits. *Id.* Cadmium levels are influenced by the pH of the soil, metals from fertilizers, and other inputs like water. *Id.*

20. **Harmful Health Effects of Lead and Cadmium.** Defendant's Products contain heavy metals, and Defendant knows this, but it nevertheless sells the Products without warning consumers that the lead and cadmium in them can seriously impact consumers' health, especially in young children.

21. Young children are big consumers of chocolates, and thus "may be at risk of exceeding the daily limit of lead" since "one 10g cube of dark chocolate may contain as much as 20% of the daily lead oral limit."[35] Children are disproportionally

---

[33] Rankin, Charley W. "Lead contamination in cocoa and cocoa products: isotopic evidence of global contamination" (Oct. 2005), Environmental Health Perspective, https://pubmed.ncbi.nlm.nih.gov/16203244/.

[34] Behar, Andrew. "New Report Details Simple, Safe, and Low-Cost Solutions to Reduce Levels of Lead and Cadmium in Chocolate" (Aug. 17, 2022), As You Sow, https://www.asyousow.org/blog/2022/8/17/new-report-explains-simple-safe-and-low-cost-solutions-to-reduce-levels-of-lead-and-cadmium-in-chocolate.

[35] Yanus, Rinat Levi, et al. "Trace elements in cocoa solids and chocolate: An ICPMS study," (May 16, 2013), Talanta, https://www.sciencedirect.com/science/article/abs/pii/S0039914013008473.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

affected by heavy metal consumption, because children have a high digestive tract absorption factor. *Id.* Children, ages 2-6 years old, have an absorption factor of 30-75% compared to 11% absorption by adults. *Id.* Thus, children are more affected by lead and cadmium in chocolate products, as they absorb a higher percentage of these heavy metals. This is especially concerning as children are a target group for chocolate manufacturers.

22.    Lead has been linked to various negative health effects. Lead can be absorbed and stored in human bodies, organs, and tissues.[36] Short-term exposure to high amounts of lead can lead to encephalopathy. *Id.* Encephalopathy is a term for any disease of the brain that alters brain function or structure.[37] Encephalopathy may quickly develop to "seizures, coma, and death from cardiorespiratory arrest."[38] In pregnant women, exposure to lead can affect the unborn child, and children "born to parents exposed to excess lead levels are more likely to have birth defects, mental retardation, behavioral disorders or die during the first year of childhood." *Id.* Furthermore, lead exposure can cause miscarriages, stillbirths, and infertility in both men and women. *Id.* Long-term exposure to lead can result in severe damage to blood-forming, nervous, urinary and reproductive systems.[39] Common symptoms of chronic

---

[36] "Substance Data Sheet for Occupational Exposure to Lead" (May 31, 1991), United States Department of Labor, https://www.osha.gov/laws-regs/regulations/standardnumber/1910/1910.1025AppA#:~:text=A%20significant%20portion%20of%20the,the%20blood%20and%20other%20tissues.

[37] "Encephalopathy" National Institute of Neurological Disorders and Stroke, https://www.ninds.nih.gov/health-information/disorders/encephalopathy#:~:text=Encephalopathy%20is%20a%20term%20for,Metabolic%20or%20mitochondrial%20dysfunction.

[38] "Substance Data Sheet for Occupational Exposure to Lead" (May 31, 1991), United States Department of Labor, https://www.osha.gov/laws-regs/regulations/standardnumber/1910/1910.1025AppA#:~:text=A%20significant%20portion%20of%20the,the%20blood%20and%20other%20tissues.

[39] "Substance Data Sheet for Occupational Exposure to Lead" (May 31, 1991), United States Department of Labor, https://www.osha.gov/laws-regs/regulations/standardnumber/1910/1910.1025AppA#:~:text=A%20significant%20portion%20of%20the,the%20blood%20and%20other%20tissues.

CLASS ACTION COMPLAINT

overexposure include: "loss of appetite, metallic taste in the mouth, anxiety, constipation, nausea, pallor, excessive tiredness, weakness, insomnia, headache, nervous irritability, muscle and joint pain or soreness, fine tremors, numbness, dizziness, hyperactivity, and colic, which can cause severe abdominal pain. *Id.* Although exposure to lead is harmful to people of all ages, it typically affects children more than adults because children tend to show signs of severe lead toxicity at lower levels than adults.[40] In fact, any level of lead can have toxic manifestations because breathing in, swallowing, or absorbing lead particles results in a high level of lead remaining in the body, stored in bones, blood, and tissues, for months and even years.[41] Therefore, no amount of lead exposure is truly safe, making Defendant's Products especially dangerous as they contain a significant level of lead, 143% and 210% of the MADL; amounts that can cause drastic and severe adverse health effects especially with repeated consumption.

23.    Like lead, cadmium causes harmful health effects. Cadmium is an element classified as a transition metal that is primarily used for commercial purposes and is produced by refining zinc ores.[42] Consuming food or water with high cadmium levels severely irritates the stomach, which can lead to vomiting and diarrhea.[43] In severe cases, exposure to cadmium can cause death. *Id.* Long-term exposure to low levels of cadmium can lead to a build-up of cadmium in the kidneys, which can eventually damage the kidneys when the build-up becomes large enough, and it can

[40] "Toxicology Profile for Lead" (Aug. 2020), U.S. Department for Health and Human Services: Agency for Toxic Substances and Disease Registry, https://www.atsdr.cdc.gov/ToxProfiles/tp13.pdf.
[41] "Lead Poisoning" (Jan. 21, 2022), Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/lead-poisoning/symptoms-causes/syc-20354717.
[42] "What is Cadmium" (Dec. 10, 2013), U.S. Department for Health and Human Services: Agency for Toxic Substances and Disease Registry, https://www.atsdr.cdc.gov/csem/cadmium/What-is-Cadmium.html.
[43] "Toxicology Profile for Cadmium" (Sept. 2012), U.S. Department of Health and Human Services, https://www.atsdr.cdc.gov/ToxProfiles/tp5.pdf.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

cause bones to become fragile and break easily. *Id.* Lab animals have been studied to confirm these effects, but current research suggests that young children are more easily susceptible to cadmium exposure, and so negative health effects are more severe for children. *Id.* Similarly to lead, exposure to cadmium even at the lowest levels can have harmful effects over time as cadmium builds up in the kidneys, stomach, and bones with each exposure.[44] Defendant's Products contain cadmium at 181% and 56% of the MADL, resulting in significant exposure to cadmium.

24.    **Defendant Was Put On Notice That Its Chocolate Contained Harmful Heavy Metals.** In 2016, As You Sow, a California-based consumer advocacy group, performed a study of the heavy metal content of cocoa products.[45] The group sent samples of 50 different chocolate products to a third-party lab and discovered that more than half of these samples contained lead and cadmium. The levels at which cadmium and lead were present exceeded California's daily MADL,[46] which is based on California's Proposition 65 safe harbor levels of 0.5 micrograms for lead and 4.1 micrograms for cadmium.[47] The study purposefully did not disclose the exact levels contained within specific products, in hopes that manufacturers would partner with As You Sow to address the high levels of lead and cadmium in their respective product lines. Ultimately, Defendant and other manufacturers agreed to regularly test their chocolate products and to include warning labels on those that exceeded lead and cadmium threshold levels agreed upon by As You Sow and the manufacturers.[48] As You Sow's efforts effectively put Defendant on notice that it had

---

[44] "Cadmium Factsheet" (April 7, 2017), Centers for Disease Control and Prevention, https://www.cdc.gov/biomonitoring/Cadmium_FactSheet.html.

[45] Kounang, Nadia. "Is There Lead in Your Chocolate?" CNN. Cable News Network (Mar. 25, 2016) https://www.cnn.com/2016/03/25/health/chocolate-lead-test/index.html.

[46] *Id.*

[47] "Proposition 65," California Office of Environmental Health Hazard Assessment, OEHHA, https://oehha.ca.gov/proposition-65.

[48] *As You Sow v. Trader Joe's Company, et al.*, No CGC-15-548791 (Consent Judgment, Feb. 15, 2018).

18

a duty to test its Products for the presence of heavy metals and subsequently remove them, or adequately disclose to consumers that these heavy metals were present in their Products and posed serious health risks to consumers. Yet, as Consumer Reports' recent study reveals, the Products contain harmful levels of heavy metals and fail to include any warning to consumers about their existence.[49]

25.    By failing to inform consumers that its Products contain lead and cadmium, Defendant deceptively labels and advertises its Products as if they are safe for consumption when they are not. Through its omission, Defendant exposes the consuming public to increased health risks posed by these harmful heavy metals. Defendant knew of the Products' heavy metal content and the associated health risks and yet it failed, and continues to fail, to disclose this material information to consumers, breaching its duty to disclose and thereby seriously impacting the health of consumers.

26.    **Creating Safe Dark Chocolate Products Is Possible**. According to As You Sow, lead can be reduced in chocolate products by improving agricultural, manufacturing, and business practices, including: (1) preventing the introduction of lead during bean fermentation and drying, (2) preventing the introduction of lead during the transportation of whole wet beans, and (3) establishing bean cleaning/winnowing quality assurance practices for reduce lead amounts.[50] Levels of cadmium can be reduced by: (1) planting new orchards in regions with low levels of cadmium, and (2) using soil amendments to increase soil pH. *Id.* According to Consumer Reports' December 2022 study that measured the amount of heavy metals

---

[49] "Lead and Cadmium Could Be in Your Dark Chocolate" (Dec. 15, 2022), Consumer Reports, https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550/.

[50] Anh, Timothy, et al. "Expert Investigation Related to Cocoa and Chocolate Products: Final Report" (Mar. 28, 2022). As You Sow, https://static1.squarespace.com/static/59a706d4f5e2319b70240ef9/t/62fd592790137e31288a1698/1660770607858/AsYouSow_ChocolateFullReport_FIN_20220817.pdf.

CLASS ACTION COMPLAINT

in dark chocolates against California's MADL,[51] researchers found that "while most of the chocolate bars in CR's tests had concerning levels of lead, cadmium, or both, five of them were relatively low in both" meaning that it is "possible for companies to make products with lower amounts of heavy metals-and for consumers to find safer products that they enjoy."[52]

**B.** **Plaintiff and Reasonable Consumers Were Misled by the Material Omission**

27. **Material Omission on the Products' Labels.** Defendant manufactures, markets, advertises, labels, packages, and sells the Products. Defendant deceives consumers by failing to disclose that the Products contain cadmium and lead, placing consumers at risk of serious health conditions. Reasonable consumers have no way of knowing, nor do they have a reason to know or believe, that the Products pose threats to their health. Defendant's failure to disclose this information is material because consumers would not purchase the Products if the lead and cadmium content in the Products were clearly disclosed.

28. **Consumers Reasonably Believe the Products are Safe for Consumption.** Plaintiff and other reasonable consumers perceive and reasonably expect food products that are sold in the marketplace to be safe for human consumption. Plaintiff and other reasonable consumers were unaware of the lead and cadmium content of the Products and reasonably believed the Products to be safe for consumption. Defendant failed to inform consumers about the lead and cadmium contained in the Products, furthering consumer deception about the safeness of the Products.

---

[51] "Lead and Cadmium Could Be in Your Dark Chocolate" (Dec. 15, 2022), Consumer Reports, https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550/.

[52] "Lead and Cadmium Could Be in Your Dark Chocolate" (Dec. 15, 2022), Consumer Reports, https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550/.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

29.    **The Products are Not Safe For Consumption.** As outlined *supra*, lead and cadmium, *at any concentration*, pose serious health risks when consumed. Defendant's Products Green & Black's Organic Dark Chocolate 70% Cacao, Hu Organic Simple Dark Chocolate 70% Cacao contain 181% and 56% of the MADL for cadmium and 143% and 210% of the MADL for lead, per ounce. These concentrations of heavy metals pose serious health risks to consumers, even for those that ingest only one serving of the Products. Here, the Products are 3.1 oz with 3 servings per bar and 2.1 oz with 2 servings per bar.

30.    **Deception.** Defendant's failure to disclose material information regarding the inclusion of lead and cadmium in the Products was deceptive since it misled consumers, including Plaintiff, to believe the Products are safe for consumption when they are not.

31.    **Omission and Obligation to Disclose.** As set forth herein, Defendant omits the presence of harmful heavy metals in its Products, leading consumers into purchasing the Products without knowing they are consuming dangerous heavy metals that they likely would not have otherwise willingly consumed. Defendant has an obligation to disclose the presence of heavy metals in its Products, because this information is material to consumers and Defendant knows or should know about the heavy metals contained in its Products.

32.    **Material.** Information about the presence of heavy metals in Defendant's Products is material to reasonable consumers, including Plaintiff, because it has the potential to influence their decision to purchase the Products, as set forth herein. Plaintiff would not have purchased the Products had Defendant disclosed that the Products contain heavy metals.

33.    **Reliance.** Reasonable consumers, including Plaintiff, reasonably relied on the Products' labeling, which failed to disclose that the Products contained heavy metals, in deciding to purchase the Products, as set forth herein.

34.    **Falsity.** The Products' representation as dark chocolate safe for

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

21

consumption is false and deceptive because the Products are not safe for consumption—meaning the Products contain harmful heavy metals which cause severe health issues to consumers.

35. **Consumers Lack Knowledge of Deception/Fraudulence.** Consumers, including Plaintiff, who purchased the Products, did not know, and had no reason to know, at the time of purchase, that the Products contained heavy metals.

36. **Defendant's Knowledge.** Defendant knew, or should have known, that its Products contain lead and cadmium, and its failure to inform consumers about those heavy metals in its Products was misleading and unlawful. Defendant intentionally and deliberately omitted this information to cause Plaintiff and similarly situated consumers to purchase the Products. Defendant, as the manufacturer, had exclusive control over how the Products were marketed and labeled, and Defendant readily and easily could have remedied the deception by disclosing to consumers that its Products contain lead and cadmium. Defendant is and was, at all times, required to ensure its Products were safe for consumption, when selling the Products anywhere in the United States. Thus, Defendant knew, or should have known, at all relevant times, that the Products' labels were deceptive, and reasonable consumers like Plaintiff were being misled into buying the Products because they lacked Defendant's knowledge about the heavy metals contained in the Products.

37. **Detriment.** Plaintiff and similarly situated consumers would not have purchased the Products if they had known the Products contain harmful metals and, therefore, the Products were not safe for consumption as claimed, promised, warranted, advertised, and represented. Accordingly, based on Defendant's material omissions, reasonable consumers, including Plaintiff, purchased the Products to their detriment.

**C.    No Adequate Remedy at Law**

38. **No Adequate Remedy at Law.** Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

a. **Broader Statutes of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. In addition, the statutes of limitations vary for certain states' laws for breach of warranty and unjust enrichment/restitution, between approximately 2 and 6 years. Thus, California Subclass members who purchased the Products more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.  Similarly, Nationwide Class members who purchased the Products prior to the furthest reach-back under the statute of limitations for breach of warranty, will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

b. **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein.  It includes, for example, Defendant's overall unfair material omission about the lead and cadmium contained in its Products, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for products that comport with the required disclosures. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations and omissions made on the type of products at issue). Thus, Plaintiff and Class members may be entitled to restitution under the UCL, while not entitled to

damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct). Similarly, unjust enrichment/restitution is broader than breach of warranty. For example, in some states, breach of warranty may require privity of contract or pre-lawsuit notice, which are not typically required to establish unjust enrichment/restitution. Thus, Plaintiff and Class members may be entitled to recover under unjust enrichment/restitution, while not entitled to damages under breach of warranty, because they purchased the products from third-party retailers or did not provide adequate notice of a breach prior to the commencement of this action.

c. **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to sell the Products without disclosing that the Products contain harmful heavy metals. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of affirmative disclosures, is necessary to dispel the public misperception about the Products that has resulted

from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements providing accurate information about the Products' true nature; and/or requiring prominent qualifications and/or disclaimers on the Products' front label concerning the Products' true nature. An injunction requiring affirmative disclosures to dispel the public's misperception and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is *currently* unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiff's investigation have not yet completed, rendering injunctive relief all the more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future Products' sales, and quantities of past/future Products' sales.

d. **Public Injunction.** Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

e. **California vs. Nationwide Class Claims**. Violations of the UCL, FAL, and CLRA are claims asserted on behalf of Plaintiff and the California Subclass against Defendant, while breach of warranty, unjust enrichment/restitution, and negligent failure to warn are asserted on behalf of Plaintiff

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

and the Nationwide Class. Dismissal of farther-reaching claims, such as restitution, would bar recovery for non-California members of the Class. In other words, legal remedies available or adequate under the California-specific causes of action (such as the UCL, FAL, and CLRA) have no impact on this Court's jurisdiction to award equitable relief under the remaining causes of action asserted on behalf of non-California putative class members.

f.  **Procedural Posture—Incomplete Discovery & Pre-Certification.** Lastly, this is an initial pleading in this action, and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves her right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

## CLASS ACTION ALLEGATIONS

39. **Class Definition.** Plaintiff brings this class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and all others similarly situated, and as members of the Classes defined as follows:

> All residents of the United States who, within the applicable statute of limitations, purchased the Product(s) for purposes other than resale ("Nationwide Class"); and

> All residents of California who, within four years prior to the filing of this Complaint, purchased the Product(s) for purposes other than resale ("California Subclass").

> ("Nationwide Class" and "California Subclass," collectively, "Class").

40. **Class Definition Exclusions.** Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

41. **Reservation of Rights to Amend the Class Definition.** Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

42. **Numerosity:** Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Nationwide Class consists of tens of thousands of purchasers (if not more) dispersed throughout the United States, and the California Subclass likewise consists of thousands of purchasers (if not more) dispersed throughout the state of California. Accordingly, it would be impracticable to join all members of the Class before the Court.

43. **Common Questions Predominate:** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

a. Whether Defendant engaged in unlawful, unfair or deceptive business practices by advertising and selling the Products;

b. Whether Defendant's conduct of advertising and selling the Products while omitting that they contain harmful heavy metals constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq.*;

c. Whether Defendant used deceptive omissions in connection with the sale of the Products in violation of Civil Code section 1750, *et seq.*;

d. Whether Defendant represented that the Products have characteristics or quantities that they do not have in violation of Civil Code section 1750, *et seq.*;

e. Whether Defendant advertised the Products with intent not to sell them as advertised in violation of Civil Code section 1750, *et seq.*;

f. Whether Defendant's labeling and advertising of the Products are misleading in violation of Business and Professions Code section 17500, *et seq.*;

g. Whether Defendant knew or by the exercise of reasonable care should have known its labeling and advertising was and is misleading in violation of Business and Professions Code section 17500, *et seq.*;

h. Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

i. Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

j. Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

k. Whether Defendant's conduct constitutes breach of warranty;

l. Whether Defendant was negligent in its failure to warn consumers about the heavy metals contained in the Products;

m. Whether Plaintiff and the Class are entitled to injunctive relief; and

n. Whether Defendant was unjustly enriched by its unlawful conduct.

44.    **Typicality**: Plaintiff's claims are typical of the claims of the Class Members she seeks to represent because Plaintiff, like the Class Members purchased Defendant's misleading and deceptive Products.  Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct.  Plaintiff's and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

45.    **Adequacy**: Plaintiff is an adequate representative of the Class she seeks to represent because her interests do not conflict with the interests of the Class Members Plaintiff seeks to represent. Plaintiff will fairly and adequately protect Class Members' interests and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

46.    **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual

joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

    a. The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

    b. Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoy its ill-gotten gains;

    c. Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

    d. When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

    e. This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused to them by Defendant.

47.  **Inconsistent Rulings.** Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

48.  **Injunctive/Equitable Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

49.  **Manageability.** Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

## COUNT ONE

**Violation of California Unfair Competition Law**

**(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

**(*On Behalf of the California Subclass*)**

50.  **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

51.  **California Subclass.** This cause of action is brought pursuant to Business and Professions Code Section 17200, *et seq.*, on behalf of Plaintiff and a California Subclass who purchased the Products within the applicable statute of limitations.

52.  **The UCL.** California Business & Professions Code, sections 17200, *et seq.* (the "UCL") prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

53.  **False Advertising Claims.** Defendant, in its advertising, labeling, and packaging of the Products, made fraudulent omissions regarding the quality and characteristics of the Products—specifically, Defendant failed to inform consumers that its Products contain heavy metals lead and cadmium.

54.  **Defendant's Deliberately Fraudulent Marketing Scheme.** Defendant does not have any reasonable basis for failing to inform consumers about the

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

dangerous heavy metals in its Products because the consumption of the Products may result in various health issues in adults and children. Defendant knew and continues to know that the Products are not safe for consumption, though Defendant intentionally advertised and marketed the Products to deceive reasonable consumers into believing that they are safe for consumption when they are not.

55. **Misleading Advertising and Omission Cause Purchase of Products.** Defendant's labeling and advertising of the Products led to, and continues to lead to, reasonable consumers, including Plaintiff, believing that the Products are truly safe for consumption as there is no disclaimer or indication that the Products contain harmful heavy metals.

56. **Injury in Fact.** Plaintiff and the California Subclass have suffered injury in fact and have lost money or property as a result of and in reliance upon Defendant's false advertising and material omission—namely Plaintiff and the California Subclass lost the money they paid for the Products.

57. **Conduct Violates the UCL.** Defendant's conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200. In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

58. **No Reasonably Available Alternatives/Legitimate Business Interests.** Defendant failed to avail itself of reasonably available, lawful alternatives to further

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

its legitimate business interests.

59.   **Business Practice.** All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue daily until Defendant voluntarily alters its conduct or Defendant is otherwise ordered to do so.

60.   **Injunction.** Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiff and the California Subclass seek an order from this Court enjoining Defendant from continuing to engage, use, or employ its practice of omitting material information regarding the heavy metal content of its Products. Plaintiff and the members of the California Subclass also seek an order requiring Defendant to disclose such information, and/or to precluding Defendant from selling the Products.

61.   **Causation/Restitution.** As a direct and proximate result of Defendant's misconduct in violation of the UCL, Plaintiff and the California Subclass were harmed in the amount of the purchase price they paid for the Products. Plaintiff and the California Subclass have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

### *"Unfair" Prong*

62.   **Unfair Standard.** Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

63. **Injury.** Defendant's action of omitting material information does not confer any benefit to consumers; rather, doing so causes injuries to consumers, who do not receive Products commensurate with their reasonable expectations, receive Products of lesser standards than what they reasonably expected to receive, and are exposed to increased health risks. Consumers cannot avoid any of the injuries caused by Defendant's deceptive labeling and omissions of the Products. The injuries caused by Defendant's deceptive labeling and advertising outweigh any benefits.

64. **Balancing Test.** Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012).

65. **No Utility.** Defendant's conduct of omitting material information has no utility and rather harms purchasers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm.

66. **Legislative Declared Policy.** Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

67. **Unfair Conduct.** Defendant's labeling and advertising of the Products, as alleged herein, is deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendant knew or should have known of its unfair conduct. Defendant's omissions constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

68. **Reasonably Available Alternatives.** There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have disclosed that its Products contain heavy metals or it could have removed the heavy metals from the Products.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

69. **Defendant's Wrongful Conduct.** All the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

70. **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of omitting material information regarding the heavy metal content of its Products.

71. **Causation/Restitution.** Plaintiff and the California Subclass have suffered injury in fact, have lost money, and were exposed to increased health risks as a result of Defendant's unfair conduct. Plaintiff and the California Subclass paid for Products that were supposedly safe for consumption when they were not. Plaintiff and the California Subclass would not have purchased the Products if they had known that the Products' advertising and labeling were deceptive. Accordingly, Plaintiff seeks restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

### *"Fraudulent" Prong*

72. **Fraud Standard.** The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

73. **Fraudulent & Material Omission.** Defendant sold the Products by omitting material information relating to the heavy metals contained in them. These omissions were deceptive, and Defendant knew or should have known of its deception. The omissions are likely to mislead consumers into purchasing the Products because they are material to the average, ordinary, and reasonable consumer.

74. **Fraudulent Business Practice.** As alleged herein, the omissions by Defendant constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

75. **Reasonable and Detrimental Reliance.** Plaintiff and the California Subclass reasonably and detrimentally relied on the labeling on the Products to their

CLASS ACTION COMPLAINT

detriment in that they purchased the Products without knowing the dangers of consuming the Products.

76. **Reasonably Available Alternatives.** Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from selling the Products, or it could have disclosed the heavy metal content in the Products, or implemented measures to prevent harmful heavy metals in its Products.

77. **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

78. **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of omitting material information regarding the heavy metal content of its Products.

79. **Causation/Restitution.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiff and the California Subclass paid for products that they believed would be safe for consumption, when, in fact, the Products contain harmful heavy metals. Plaintiff and the California Subclass would not have purchased the Products if they had known the truth. Accordingly, Plaintiff seeks restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

### *"Unlawful" Prong*

80. **Unlawful Standard.** The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

81. **Violations of CLRA and FAL.** Defendant's labeling of the Products, as alleged herein, violates California Civil Code sections 1750, *et seq.* and California Business and Professions Code sections 17500, *et seq.* as set forth below in the

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

sections regarding those causes of action.

82. **Additional Violations.** Defendant's conduct in making the deceptive omissions described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to their competitors. This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code sections 17200-17208. Additionally, Defendant's omission of material facts, as set forth herein, violate California Civil Code sections 1572, 1573, 1709, 1710, and 1711, as well as the common law.

83. **Unlawful Conduct.** Defendant's packaging, labeling, and advertising of the Products, as alleged herein, are deceptive, misleading, and unreasonable, and constitute unlawful conduct. Defendant knew or should have known of its unlawful conduct.

84. **Reasonably Available Alternatives.** Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from selling the Products, or it could have disclosed the heavy metal content in the Products, or implemented measures to prevent harmful heavy metals in its Products.

85. **Business Practice.** All the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

86. **Injunction.** Pursuant to Business and Professions Code Section 17203, Plaintiff and the California Subclass seek an order from this Court enjoining Defendant from continuing to engage, use, or employ its practice of omitting material information regarding the heavy metal content of its Products.

87. **Causation/Restitution.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's unlawful

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

CLASS ACTION COMPLAINT

conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products. Plaintiff and the California Subclass would not have purchased the Products if they had known that Defendant purposely deceived consumers into believing that the Products are safe for consumption. Accordingly, Plaintiff seeks restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

**COUNT TWO**

**Violation of California False Advertising Law**

**(Cal. Bus. & Prof. Code §§ 17500, *et seq.*)**

***(On Behalf of the California Subclass)***

88. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

89. **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

90. **FAL Standard.** The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

91. **Material Omission Disseminated to Public.** Defendant violated section 17500 when it sold the Products to the public without disclosing the heavy metals contained in them. This conduct was deceptive because the Products' labeling omits material information regarding the heavy metal content of its Product. The omissions were material because they are likely to mislead a reasonable consumer into purchasing the Products.

92. **Knowledge.** Defendant knew or should have known that its failure to disclose information relating to the heavy metals contained in its Products was misleading and in violation of § 17500.

93. **Intent to sell.** Defendant's conduct was specifically designed to induce reasonable consumers, like Plaintiff and the California Subclass, to purchase the

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Products.

94. **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the FAL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products and increased health risks from consuming the heavy metals in the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

## COUNT THREE

**Violation of California Consumers Legal Remedies Act**

**(Cal. Civ. Code §§ 1750, *et seq*.)**

**(*On Behalf of the California Subclass*)**

95. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

96. **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

97. **CLRA Standard.** The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

98. **Goods/Services.** The Products are "goods," as defined by the CLRA in California Civil Code §1761(a).

99. **Defendant.** Defendant is a "person," as defined by the CLRA in

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

39

California Civil Code §1761(c).

100. **Consumers.** Plaintiff and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code §1761(d).

101. **Transactions.** The purchase of the Products by Plaintiff and members of the California Subclass are "transactions" as defined by the CLRA under California Civil Code section 1761(e).

102. **Violations of the CLRA.** Defendant violated the following sections of the CLRA by selling the Products to Plaintiff and the California Subclass without disclosing that the Products contain lead and cadmium:

    a. Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have."

    b. Section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . [when] they are of another."

    c. Section 1770(a)(9) by advertising the Products "with [the] intent not to sell them as advertised."

103. **Knowledge.** Defendant's uniform and material omissions regarding the Products were likely to deceive, and Defendant knew or should have known that its omissions were misleading.

104. **Malicious.** Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from consumers, including Plaintiff, to increase the sales of the Products.

105. **Plaintiff Could Not Have Avoided Injury.** Plaintiff and members of the California Subclass could not have reasonably avoided such injury. Plaintiff and members of the California Subclass were unaware of the existence of the facts that Defendant suppressed and failed to disclose, and Plaintiff and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

106. **Causation/Reliance/Materiality.** Plaintiff and the California Subclass

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

suffered harm as a result of Defendant's violations of the CLRA because they purchased the Products without knowing they contained heavy metals. Defendant's omission of this information was material because a reasonable consumer would consider the information important in deciding whether to purchase the Products.

107. **Section 1782(d) Notice Requirement.** Pursuant to California Civil Code, section 1782, on January 12, 2023, Plaintiff, on Plaintiff's behalf and on behalf of members of the Class, notified Defendant of its alleged violations of the CLRA via U.S. Certified Mail.

108. **Causation/Damages (Section 1782(d)).** As a direct and proximate result of Defendant's misconduct in violation of the CLRA, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial.

109. **Injunction.** Given that Defendant's conduct violated California Civil Code section 1780, Plaintiff and members of the California Subclass are entitled to seek, and do hereby seek, injunctive relief to put an end to Defendant's violations of the CLRA. Plaintiff has no adequate remedy at law. Without equitable relief, Defendant's unfair and deceptive practices will continue to harm Plaintiff and the California Subclass.

## COUNT FOUR

### Breach of Implied Warranty

### (*On Behalf of the Nationwide Class and California Subclass*)

110. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

111. **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass who

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

purchased the Products within the applicable statute of limitations.

112. **Implied Warranty of Merchantability.** By advertising and selling the Products at issue, Defendant, a merchant of goods, made promises and affirmations of fact that the Products are merchantable and conform to the promises or affirmations of fact made on the Products' packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising, combined with the implied warranty of merchantability, constitute warranties that became part of the basis of the bargain between Plaintiff and members of the Class and Defendant---to wit, that the Products, among other things, are safe for consumption.

113. **Breach of Warranty.** Contrary to Defendant's warranties, the Products do not conform to the Products' representation of being safe for human consumption due to the inclusion of harmful heavy metals and, therefore, Defendant breached its warranties about the Products and their qualities.

114. **Causation/Remedies.** As a direct and proximate result of Defendant's breach of warranty, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

115. **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for breach of warranty on behalf of Plaintiff and the Class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

## COUNT FIVE

### Unjust Enrichment/Restitution

### (*On Behalf of the Nationwide Class and California Subclass*)

116. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

117. **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass (together, the Class) who purchased the Products within the applicable statute of limitations.

118. **Plaintiff/Class Conferred a Benefit.** By purchasing the Products, Plaintiff and members of the Class conferred a benefit on Defendant in the form of the purchase price of the Products.

119. **Defendant's Knowledge of Conferred Benefit.** Defendant had knowledge of such benefit and Defendant appreciated the benefit because, were consumers not to purchase the Products, Defendant would not generate revenue from the sales of the Products.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

120. **Defendant's Unjust Receipt Through Deception.** Defendant's knowing acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendant's fraudulent, misleading, and deceptive omissions.

121. **Causation/Restitution.** As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for unjust enrichment in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

## COUNT SIX

### Negligent Failure to Warn

### (*On Behalf of the Nationwide Class and California Subclass*)

122. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

123. **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass (together, the Class) who purchased the Products within the applicable statute of limitations.

124. **Defendant's Manufactured Products.** At all relevant times, Defendant was responsible for designing, constructing, testing, manufacturing, inspecting, distributing, labeling, marketing, advertising, and/or selling the Products. At all relevant times, it was reasonably foreseeable by Defendant that the consumption of the Products, which contained heavy metals, lead and cadmium, involved serious health risks and was unreasonably dangerous to Plaintiff and the Class as the ultimate users of the Products.

125. **Knowledge.** Defendant knew, or through the exercise of reasonable care, should have known of the presence of heavy metals in the Products and the inherent dangers associated with consuming the Products as described herein, and knew that Plaintiff and Class Members could not reasonably be aware of those health risks. Defendant failed to exercise reasonable care in providing Plaintiff and the Class with adequate warnings.

126. **Defendant Duty To Warn.** Defendant, as the designer, manufacturer, tester, marketer, advertiser, and/or seller of the Products, had a duty to warn Plaintiff and the Class of heavy metals contained in the Products and health risks associated with the consumption of the Products. At minimum, the duty arose for Defendant to warn consumers that the Products contained heavy metals and consumption of the Products could result in health risks and was unreasonably dangerous to consume.

127. **Negligent and Breach of Duty**. Defendant was negligent and breached its duty of care by negligently failing to provide warnings to consumers of the Products, including Plaintiff and the Class, about the true nature of the Products, its health risks, and potential dangers. Defendant was negligent and breached its duty of care by concealing the risks of and failing to warn consumers that the Products contain harmful heavy metals.

128. **Causation.** Defendant's failure to provide adequate warning about the potential risks associated with the Products was a direct cause of the Plaintiff's injuries.

129. **Damages**. As a direct and proximate result of Defendant's conduct, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

## **PRAYER FOR RELIEF**

130. WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

a. **Certification:** For an order certifying this action as a class action, appointing Plaintiff as the Class Representative, and appointing Plaintiff's Counsel as Class Counsel;

b. **Declaratory Relief:** For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

c. **Injunction:** For an order requiring Defendant to immediately cease and desist from selling the unlawful Products in violation of law; enjoining Defendant from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; requiring Defendant to engage in an affirmative advertising campaign to dispel the public misperception of the Products resulting from Defendant's unlawful conduct; and requiring all further and just corrective action, consistent with permissible law and pursuant to only those causes of action so permitted;

d. **Damages/Restitution/Disgorgement:** For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class, consistent with permissible law and pursuant to only those causes of action so permitted;

e. **Punitive Damages/Penalties:** For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with permissible law and pursuant to only those causes of action

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1    so permitted;

2    f.  **Attorneys' Fees & Costs:** For an order awarding attorneys' fees

3    and costs, consistent with permissible law and pursuant to only

4    those causes of action so permitted;

5    g.  **Pre/Post-Judgment Interest:** For an order awarding pre-

6    judgment and post-judgment interest, consistent with permissible

7    law and pursuant to only those causes of action so permitted; and

8    h.  **All Just & Proper Relief:** For such other and further relief as

9    the Court deems just and proper.

10   **<u>DEMAND FOR JURY TRIAL</u>**

11   Plaintiff hereby demands a trial by jury on all issues and causes of action so

12   triable.

13   Dated: March 27, 2023                    Respectfully submitted,

15                                            **CLARKSON LAW FIRM, P.C.**
                                              By:

17                                            */s/ Bahar Sodaify*
18                                            Ryan J. Clarkson, Esq.
                                              Bahar Sodaify, Esq.
19                                            Alan Gudino, Esq.
                                              Ryan D. Ardi, Esq.

21                                            *Attorneys for Plaintiff*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT